# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RADIAL ENGINES, LTD., )
)
        Plaintiff, )
vs. ) NO. CIV-16-0456-HE
)
WACO CLASSIC AIRCRAFT )
CORPORATION, and )
PETER BOWERS, individually )
)
        Defendants. )

## ORDER

Plaintiff Radial Engines, Ltd. (REL") filed this action again WACO Classic Aircraft Corporation ("WACO") and Peter Bowers, asserting various tort and statutory claims arising out of its modification of an engine for a biplane WACO manufactured. Defendants moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Having considered the parties' briefs, the court concludes defendants' motion should be granted in part and denied in part.

### Background

REL alleges in its complaint that it is a Guthrie, Oklahoma corporation, which specializes in overhauling aircraft engines, that defendant WACO, a Michigan corporation with its principal place of business in Michigan, manufactures 1930's sport biplanes, and that defendant Bowers, WACO's owner, is a Michigan citizen. REL claims it contracted with Complete Aviation Management ("CAM"), of Lantana, Florida, to supply a modified engine for installation in a WACO aircraft ("the Aircraft") owned by Anaconda Jet Sales, Inc.

("Anaconda"). Under the terms of the agreement, the engine that was originally installed in the Aircraft was going to be swapped out with another engine that REL had modified. To enable it to comply with certain FFA certification requirements it was contractually obligated to meet, REL alleges it hired Bobby Minnis, an FAA Designated Engineering Representative ("DER"). REL asserts Mr. Minnis certified and approved the data it produced regarding the installation of the modified engine and filed the necessary form with the FAA.

WACO then allegedly learned that REL had furnished the modified engine to Anaconda and complained to Steven Rosenfeld, an aerospace Engineer with the FAA Chicago Aircraft Certification Office ("ACO). According to REL, Mr. Rosenfeld contacted it "for clarification as to the modification REL had performed." Doc. #1, ¶16.[1] REL asserts that, after considerable time and effort and with one change, the requirement of a limitations placard,[2] Mr. Rosenfeld "approved and certified the data that had previously been approved and certified by Mr. Minnis." *Id.*

REL alleges that after it had shipped the overhauled engine to CAM for installation in the Aircraft, defendants sent Anaconda a letter ("WACO-Anaconda Letter") falsely asserting that the work plaintiff performed was improper, that the engine installation was improper and that REL could not perform the work without WACO's express permission.

---

[1]*Page references to briefs and exhibits are to the CM/ECF document and page number.*

[2]*As described by defendants, the change was "a specific 'operating limits' placard on the plane requiring that the pilot be warned not to push the new engine past 2,050RPM – the equivalent of 275HP." Doc. #14, p. 6.*

WACO also allegedly contacted the Florida Flight Standards District Office ("FSDO"), "improperly caus[ing] the aircraft to be grounded" and "render[ing] the Aircraft unflyable and unmarketable." *Id.* at ¶18. Defendants concluded the WACO-Anaconda Letter with the statement that it "consider[ed] the engine installation unsafe and the aircraft not airworthy." Doc. #14-3;[3] Doc. #1, ¶19. Defendants then allegedly enclosed the WACO-Anaconda Letter with a letter they sent to the FAA Aircraft Registration branch in Oklahoma City, Oklahoma (the "WACO-FAA Letter"). REL claims defendants asked the FAA to place the WACO-Anaconda Letter in the Aircraft's Airworthiness File, and the FAA placed both letters in the Aircraft's Registration File.

REL asserts that Anaconda and/or CAM reacted by hiring counsel and threatening suit. It alleges defendants refused Anaconda's request that WACO retract its two letters, despite Anaconda's explanation that the work REL performed was approved by an FAA DER and the FAA ACO who oversees WACO. According to REL, WACO's refusal caused the dispute between it and Anaconda/CAM to escalate. REL pleads that it chose to settle the matter for $5,000, although it also incurred substantial attorney's fees, consultant fees and other expenses.

REL alleges that, "to correct the false representations made by Defendants to the FAA," it hired Leslie Sargent, a former FAA employee, who reviewed the work it performed and concluded it "was appropriate and satisfied all applicable rules and regulations." *Id.* at

---

[3]*Defendants attached the letters that underlie plaintiff's claims to their motion to dismiss.*

¶26. REL states that, in response to Mr. Sargent's request, the FAA removed the two WACO letters from the Aircraft's Registration File.

REL also asserts that, due to the actions and position taken by WACO, it obtained a legal interpretation of 14 C.F.R. § 91.403(d) from the FAA, in which the agency concluded that its major alteration of the engine was "in accord with the FAA's regulations" and it was not required to obtain WACO's permission to modify the engine. *Id.* at ¶30.

REL seeks a declaratory judgment that it is not required to obtain defendants' permission to perform similar engine upgrades or install similarly modified engines on WACO aircraft. It also requests injunctive relief to preclude defendants from "continu[ing] to engage in false, misleading, and deceptive practices" and causing further disruption and interference with its business. *Id.* at ¶82. REL asserts claims for tortious interference with business relationships, tortious interference with prospective economic advantage, violation of the Oklahoma Deceptive Trade Practices Act, slander/defamation, unfair competition, and unjust enrichment.

Defendants assert that this is a simple matter of plaintiff complaining that WACO's opinion in a letter to a non-party biplane owner and to the FAA "about the installation of a more powerful engine than the plane was designed to handle, somehow 'defamed' or intentionally 'interfered' with Radial's business." Doc. #14, p. 8. They contend that because the FAA has approved the major alteration and clarified that the manufacturer's permission is not required for the alteration that plaintiff performed, and no breach of

contract occurred between plaintiff, CAM and/or Anaconda, plaintiff's allegations fail to state a plausible claim for relief. They also challenge the court's *in personam* jurisdiction over both defendants.

## Analysis

### In personam jurisdiction

The law of the forum state determines whether a federal court has *in personam* jurisdiction over a nonresident in diversity cases. *See* Anzures v. Flagship Rest. Grp., 819 F.3d 1277, 1279 (10th Cir. 2016). The test used to determine whether personal jurisdiction exists "involves two questions – 'whether any applicable statute authorizes the service of process on defendants' and 'whether the exercise of such statutory jurisdiction comports with constitutional due process demands.'" *Id.* (quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir.2008)). Because Oklahoma's long-arm statute permits the exercise of jurisdiction to the full extent allowed by the Constitution, the question becomes whether maintenance of the suit satisfies due process requirements. *Id.*; 12 Okla. Stat. § 2004(F) ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."). Due process is not offended by the exercise of jurisdiction over a nonresident defendant so long as that defendant has "'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" Dudnikov, 514 F.3d at 1070 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

5

Whether a nonresident individual or company has the necessary minimum contacts with the forum state is decided on the particular facts of each case and plaintiff has the burden of establishing personal jurisdiction. *Id.* at 1069. If the jurisdictional question is determined on the basis of the complaint, affidavits and other written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Id.* at 1070. Any factual disputes are resolved in plaintiff's favor. Anzures, 819 F.3d at 1279.

A court may exercise general or specific jurisdiction over a company or individual. Specific jurisdiction "depends 'on the relationship among the defendant, the forum, and the litigation.'" Anzures, 819 F.3d at 1280 (quoting Walden, 134 S.Ct. at 1121). "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts." Dudnikov, 514 F.3d at 1078. (internal citation and quotations marks omitted). Here, plaintiff focuses on specific jurisdiction. REL does state that "[u]pon information and belief, general personal may also be exercised over Defendants." Doc. #17, p. 4. It asserts that WACO has made numerous purchases from REL – amounting to over $1.3 million in goods and services – on a regular and ongoing basis "over the course of the parties eighteen-year relationship." *Id.* at pp. 4-5. The problem is the invoices submitted to substantiate these purchases reflect a business relationship that dwindled over the years preceding the events underlying this litigation. There is one invoice for 2014, reflecting a trade so the dollar amount of the transaction is unknown, three invoices for 2013, reflecting purchases amounting to $14,610,

and six invoices for 2012, amounting to approximately $7,020. Doc. #17-1. Those clearly are not "sufficiently systematic contacts with Oklahoma to warrant general personal jurisdiction [here]." Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013).[4] As described by the Supreme Court, general jurisdiction requires that a sister-state corporation's affiliations with the state be "so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).[5] That leaves the question of whether plaintiff has established minimum contacts sufficient to justify exercising specific jurisdiction over defendants.

In the tort context the court "generally consider[s] 'whether the nonresident defendant "purposefully directed" its activities at the forum state.'" Anzures, 819 F.3d at 1280 (quoting Dudnikov, 514 F.3d at 1071). "[P]urposeful direction exists when there is 'an intentional action ... expressly aimed at the forum state ... with [the] knowledge that the brunt of the injury would be felt in the forum state.'" Id. (quoting Dudnikov, 514 F.3d at 1072). A plaintiff's injuries also must "'arise out of' [the] defendant's forum-related activities." Dudnikov, 514 F.3d at 1071 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472(1985)). As the Tenth Circuit explained in Anzures, "'[f]or a State to exercise

---

[4]*REL asks for leave to conduct discovery on the issue of general jurisdiction if the court concludes it does not have specific personal jurisdiction over defendants. As it concludes specific jurisdiction exists, the requested discovery is unnecessary.*

[5]*Defendants also have offered unrefuted evidence that WACO has no employees in Oklahoma, does not have an office or own property here, and is not registered to do business in the state.*

jurisdiction consistent with due process, the defendant's <u>suit-related</u> conduct must create a substantial connection with the forum State.'" <u>Anzures</u>, 819 F.3d at 1280 (quoting <u>Walden v. Fiore</u>, 134 S.Ct. 1115, 1121 (2014)) (emphasis in original).

<u>Defendant Bowers</u>

Relying on the fiduciary shield doctrine, defendant Bowers argues he is not subject to the court's jurisdiction because plaintiff has not alleged that any acts he performed were for his own personal benefit. "'Under the "fiduciary shield doctrine," a nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of the corporation.'" <u>Newsome</u>, 722 F.3d at 1275 (quoting 3A William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Corporations</u> § 1296.20 (Sept. 2012 update)). However, Oklahoma, has not yet adopted the doctrine. <i>Id.</i> While a corporation's contacts are not imputed to its employees for purposes of the personal jurisdictional analysis, <i>id.</i>, "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." <u>Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles</u>, 87 F.3d 413, 418 (10th Cir. 1996).[6] The Supreme Court recognized this principle in <u>Calder v. Jones</u>, 465

---

[6]<i>Defendants' reliance on in <u>Ten Mile Industrial Park v. Western Plains Service Corp.</u>, 810 F.2d 1518 (10th Cir.1987) is misplaced. As the Tenth Circuit noted in <u>Newsome</u>, it conflated the fiduciary shield doctrine and the no-imputed-contacts rule in several cases, including <u>Ten Mile</u>. <u>Newsome</u>, 722 F.3d at 1277. However, "Ten Mile was at most a statement about Wyoming law." Id.. The Tenth Circuit noted in <u>Newsome</u>, that the Supreme Court had rejected in <u>Calder v. Jones</u>, 465 U.S. (1984)"the suggestion that employees who act in their official capacity are somehow</i>

U.S. 783 (1984), where it held that two individuals' "status as employees does not somehow insulate them from jurisdiction." *Id.* at 790. Although plaintiff did not file the letters which form the basis for its claims with the complaint, defendants attached them to their motion to dismiss. Both were signed by defendant Bowers.[7] The question therefore is whether, based on Bowers' actions, the court has specific jurisdiction over the defendants.

In their brief analysis of the jurisdictional issue,[8] defendants ignore pertinent case law and instead rely on their assessment of the facts which, they claim, do not provide a basis for personal jurisdiction. They contend that the two letters which underlie plaintiff's claims were directed to Anaconda and concerned CAM's alteration of the plane. Defendants argue that because both Anaconda and CAM are in Florida and the letters do not mention REL, the letters "cannot be said to have been 'directed' at anyone in Oklahoma." Doc. #14, p. 11. Defendants discount the letter sent to the FAA in Oklahoma City, asserting that it is merely coincidental that the FAA office is located in this state.

Defendants ignore one critical fact, and that is that plaintiff's business, which REL alleges defendants knowingly and intentionally interfered with, is located in Oklahoma. The

---

*shielded from suit in their individual capacity."* Id. at 1276 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984)).

[7]*In neither letter did Bowers state that he was signing as WACO's president. See Doc. Nos. 14-3, 14-4.*

[8]*In their response, defendants focus on whether defendant Bowers is protected by the fiduciary shield doctrine and therefore not subject to personal jurisdiction in Oklahoma. Because the existence of jurisdiction over WACO depends on acts taken by Mr. Bowers, the court will refer interchangeably to jurisdiction over WACO or defendants.*

facts here are similar to those in Dudnikov and Calder. In Dudnikov, the Tenth Circuit concluded that a Colorado district court had personal jurisdiction over non-Colorado defendants who sent eBay in California a notice of claimed copyright infringement and successfully halted a Colorado company's online auction of allegedly infringing prints. In a later case the court explained its reasoning in Dudnikov: "[T]he defendants, who we assumed knew that plaintiffs' business was in Colorado, acted 'with the ultimate purpose of cancelling plaintiffs' auction in Colorado' and so 'express[ly] aim[ed]'" their conduct at Colorado." Anzures, 819 F.3d at 1282 (quoting Dudnikov, 514 F.3d at 1075)). In Dudnikov, the court had specifically "noted that the defendants' actions were 'performed for the very purpose of having their consequences felt in the forum state.'" Id. (quoting Dudnikov, 514 F.3d at 1078).

In Calder the Supreme Court held that a district court could exercise personal jurisdiction over Florida-based defendants who wrote an allegedly libelous story regarding the California activities of a California resident, that "impugned [her] professionalism" in California, the state where her "television career was centered." Id. at 788. The Court concluded that "[t]he article was drawn from California sources, and the brunt of the harm, in terms both of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California." Id. at 788–89. Therefore, it determined "California [was] the focal point both of the story and of the harm suffered," and the defendants' "actions were expressly aimed at California." Id. at 789.

Here, plaintiff has not "charged [defendants] with mere untargeted negligence." Calder, 465 U.S. at 789. Instead, REL has pleaded that "their intentional, and allegedly tortious, actions were expressly aimed at [Oklahoma]." Id. Defendants not only wrote the plane's owner, Anaconda, stating its plane had been "improperly modified," they contacted the FAA's Chicago Aircraft Certification Office and the Florida Flight Standards District, resulting in the plane being grounded. They complained about plaintiff's failure to comply with FAA rules and to obtain WACO's permission for the engine modification and had the FAA place a letter in the Aircraft's Airworthiness File which stated that, because of the installation of a modified engine, WACO considered the plane to be unsafe and not airworthy. Defendants allegedly further refused to retract the letter even after learning the FAA had approved the engine changes. Defendants knew from their prior dealings with REL that it was based in Oklahoma and REL claims defendants took specific actions which, they knew, in such a highly regulated industry, could potentially cripple its business. The alleged harm REL seeks to remedy – including expenses it incurred as the result of threatened litigation by CAM and Anaconda, the adverse affects on its business relationships with those two entities, the cost of getting the letter removed from the Aircraft's file, its loss of customers and its loss of reputation and good will – resulted from those actions.

Having concluded that plaintiff has met its burden at this stage of showing that defendants expressly directed their conduct at Oklahoma, see Newsome, 722 F.3d at 1268-69, the court must consider whether plaintiff's injuries "arise out of" defendants' contacts

with Oklahoma. *See* Dudnikov, 514 F.3d at 1078-79. Defendants conceded this part of the minimum contacts test, by not addressing it. The court also determines that, applying either a but-for or proximate causation test, *see* Newsome, 722 F.3d at 1269-70, the test is met. Plaintiff's claims arise from the letters defendants sent to and contacts they made with Anaconda and the FAA. *See* Dudnikov, 514 F.3d at 1079-80.

"[W]ith minimum contacts established, it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1080 (internal quotation marks omitted). As defendants make no attempt to meet their burden, the court considers this issue, too, conceded. *See* Newsome, 722 F.3d at 1271 (" When a plaintiff satisfies its minimum contacts burden, the burden shifts to the defendant to demonstrate that exercising personal jurisdiction would nonetheless offend traditional notions of fair play and substantial justice.") (internal quotation marks omitted). Nonetheless, an analysis of the five factors usually considered does not show that this court's exercise of jurisdiction would be unreasonable. They are: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." Newsome, 722 F.3d at 1271.

While there would be a burden on defendants if they are required to litigate in

Oklahoma, "[a]s in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.'" Dudnikov, 514 F.3d at 1081. Defendants also have not indicated how their defense of the case would be hampered in any significant way if the case remains here. As for the second and third factors, Oklahoma has "an important interest in providing a forum in which [its] residents can seek redress for injuries caused by out-of-state actors," *id.* (internal quotation marks omitted), and plaintiff has an interest in a convenient and effective forum, which a federal district court in Oklahoma would provide. Oklahoma probably is as convenient a location for a trial as any of the other possible locations, as witnesses will be located in several states, the alleged wrongs underlying the lawsuit may have occurred in several states and different states' laws may apply. The remaining factor – the interests of the states in advancing fundamental substantive social policies – " does [not] loom large for either side in this case." *Id.* On balance, it would not be unfair to require defendants to answer for their alleged actions in Oklahoma.

Failure to State a Claim

Defendants also move to dismiss the complaint on the ground that it fails to state a claim. When considering whether a plaintiff's claim should be dismissed under Fed.R.Civ.P.12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint

must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Declaratory and Injunctive Relief

Defendants assert that plaintiff's claims seeking declaratory and injunctive relief are based on speculation about what WACO will do in the future. They assert that, in light of the FAA's "guidance" that WACO's permission is not required for the specific type of engine modification plaintiff performed for Anaconda's plane, declaratory or injunctive relief is unnecessary and not appropriate.

REL has alleged that "[u]pon information and belief, Defendants continue to assert that REL may not install similarly modified engines on WACO aircraft without Defendants' permission" and "will continue to contact REL's customers and the FAA regarding REL's alleged inability to install similarly modified engines on WACO aircraft without Defendants' permission." Doc. #1, ¶¶38, 39. The court concludes these allegations are sufficient at the pleading stage to state claims for declaratory and injunctive relief. Defendants' motion will be denied as to Counts I and VIII.

Slander

Defendants argue that REL's defamation claim is time-barred because the statements upon which it is based occurred more than a year before the lawsuit was filed and the applicable statute of limitations is one year. *See* 12 Okla. Stat. § 95(A)(4).[9] They assert that because plaintiff's other tortious interference type claims rely on the "allegedly defamatory letter issued to Anaconda in 2014, or the earlier 'complaint' to the FAA," they too should be held to be time-barred. Doc. #14, p. 14.

Although a defamation action generally accrues on the date of publication, Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 839 (Okla.2001), the discovery rule applies in a libel action if the publication is likely to be concealed from the plaintiff or published in a secretive manner which would make it unlikely to come to the plaintiff's attention. *Id.* at 839-41. Plaintiff asserts that it was unaware of the letters WACO sent until after May 3, 2016. As the complaint was filed on May 3, 2016, REL contends that the lawsuit was filed within one year of its discovery of the alleged "defamatory and slanderous conduct," and therefore its slander claim is timely. That is sufficient at this stage of the litigation to permit plaintiff's slander (and other claims)[10] to proceed. Defendants are not, though, precluded from subsequently showing that the discovery rule does not apply to

---

[9]*The parties apply Oklahoma law to the limitations issue and for purposes of the motion to dismiss, the court sees no reason to do otherwise.*

[10]*Because the court has concluded plaintiff's slander claim is timely, it does not have to consider defendants' argument that its one year limitations period should be applied to plaintiff's other claims. As plaintiff points out, the Tenth Circuit was applying Kansas law in Sports Unlimited, Inc. v. Lankford Enters, Inc., 275 F.3d 996, 1000 (10th Cir. 2002), the case defendants rely on. As has been noted, the parties appear to agree that Oklahoma law governs the limitations issue.*

toll the limitations period.

In addition to contending that plaintiff's slander claim is untimely, defendants assert that the claim fails because their speech was privileged. They rely on 12 Okla. Stat. § 1443.1, which applies to communications made "[i]n any legislative or judicial proceeding or any other proceeding authorized by law." *Id*. However, plaintiff does not plead that WACO's statements were made in some type of quasi-judicial or agency proceedings. Instead, it alleges they were sent "to a non-governmental entity with the purpose of interfering with the contractual relationship between that entity and REL." Doc. #17, p. 13. WACO's reliance on a claim of privilege at this stage of the litigation therefore fails.

Similarly, while defendants may subsequently prevail on their argument that, because they were merely expressing an opinion, they cannot be held liable for slander, that issue cannot be resolved at this time. Defendants' motion to dismiss will be denied as to Count V.

Tortious Interference Claims

The complaint includes two tortious interference claims – interference with business relationships and interference with prospective economic advantage. While similar, the two torts are distinct. Overbeck v. Quaker Life Ins. Co., 757 P.2d 846, 847 (Okla.Civ.App. 1984). "Interference with a prospective economic advantage usually involves interference with some type of reasonable expectation of profit, whereas interference with a contractual relationship results in loss of a property right." *Id*. at 847-48. After reviewing Counts II and

III, it is apparent REL has alleged only a tortious interference with contractual or business relations claim based on REL's contract/relationship with CAM and Anaconda. *See* Doc. #1, ¶¶43, 51.

"In Oklahoma, tortious or malicious interference with a contract has the following elements: (1) 'a business or contractual right with which there was interference;' (2) 'the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable;' and (3) 'damage was proximately sustained as a result of the complained-of interference.'" Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007) (quoting Morrow Dev. Corp. v. Am. Bank & Trust Co., 875 P.2d 411, 416 (Okla.1994)). Defendants argue plaintiff has failed to allege the elements of that claim. The court disagrees. Plaintiff may not be able to prove these elements, but they have been adequately pled. Defendants' motion will be denied as to Count II. It will, however, be granted as to Count III. *See generally* Boyle Servs., Inc. v. Dewberry Design Grp., Inc., 24 P.3d 878, 880 (Okla. Civ. App. 2001) ("Interference [with prospective economic advantage] includes inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation.").

Deceptive Trade Practices Act

REL claims defendants violated the Oklahoma Deceptive Trade Practices Act ("DTPA") when they "knowingly made a false representation as to the approval or certification of the goods or services of REL when [they] sent the WACO-Anaconda Letter

to Anaconda" and then included that letter with their letter to the FAA. Doc. #1, ¶¶57, 58. REL asserts that paragraphs 18-19, 22-25 and 57-60 of the complaint support the essential elements of the claimed violation of the DTPA. See Doc. #17, p. 14 n.6. The statute provides that "[a] person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person . . . [k]nowingly makes a false representation as to the source, sponsorship, approval, or certification of goods or services." 78 Okla. Stat. § 53(A)(2).

Defendants assert that WACO did not violate the DTPA when it "expressed its opinion that the particular engine swap at issue could render the particular biplane at issue unsafe." Doc. #14, p. 19. The court agrees with defendants that REL has not alleged conduct by defendants falling within the parameters of the statute. Defendants' motion will be granted as to Count IV.

Unfair Competition

In support of its unfair competition claim, REL cites 15 U.S.C. § 1125 and asserts that liability "may be based upon a false statement that is likely to cause confusion as to the sponsorship or approval of, or otherwise misrepresents, the goods or services of another who is likely to be damaged by such statements." Doc. #17, p. 14 n.7. REL states that allegations supporting this claim are found in ¶¶ 18-19, 22-25 and 70-74 of the Complaint. Id. Plaintiff has not, though, pleaded facts which support a claim under the Lanham Act for unfair competition. See POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2234 (2014)

("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling."); Sports Unlimited, Inc. v. Lankford Enters., Inc., 275 F.3d 996, 1002-05 (10th Cir. 2002). Defendants' motion will be granted as to Count VI.

## Conclusion

The court has concluded plaintiff has made a prima facie showing of specific personal jurisdiction over defendants. It also has determined that the complaint fails to state a claim for tortious interference with prospective economic advantage or unfair competition under 15 U.S.C. § 1125 and does not allege a violation of the Oklahoma Deceptive Trade Practices Act.[11] Those claims are dismissed. Plaintiff's request for leave to amend[12] is denied with respect to its statutory claims. If REL seeks leave to amend its tortious interference with prospective economic advantage claim it is directed to file a motion that complies with LCvR15.1 within five days of this order.

Accordingly, defendants' motion to dismiss [Doc. #14] is granted in part and denied in part.

**IT IS SO ORDERED**.

Dated this ___4th___ day of October , 2016.

JOE HEATON
CHIEF U. S. DISTRICT JUDGE

---

[11] Neither party discussed plaintiff's unjust enrichment claim.

[12] See Doc. #17, p. 14 n.8.